CV 22-6925



FILED
CLERK

**UNITED STATES DISTRICT COURT** NOV 11 PM 2: 13
**EASTERN DISTRICT OF NEW YORK**

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

RECEIVED
NOV 11 2022
PRO SE OFFICE

---

Jahmil O. Barrett,

                                   **Plaintiff,**

-against-

**Local 804 Union International Brotherhood of
Teamsters (IBT),**
and
**United Parcel Service Inc. (UPS),**

                                   **Defendants.**

---

**Complaint for a Civil Case**

**Case Number:**

**Jury Trial:    Yes**

KOVNER, J

BLOOM, M.J.

# TABLE OF CONTENTS

PARTIES TO COMPLAINT ...........................................................................3

BASIS FOR JURISDICTION.........................................................................4

AMOUNT IN CONTROVERSY.....................................................................4

STATEMENT OF CLAIM..............................................................................5

RELIEF..........................................................................................................16

EXHAUSTION OF FEDRAL ADMINISTRATIVE REMEDIES..............17

CERTIFICATE AND CLOSING...................................................................18

EXHIBIT TAB...............................................................................................20

    A. 2007-2013 Collective Bargaining Agreement
    B. 2013-2018 Collective Bargaining Agreement
    C. 2018-2023 Collective Bargaining Agreement
    D. New Yorker's Workers' Compensation Law §120
    E. NLRB Letter dated October 23, 2020 [Findley]
    F. Labor Management Relations Act: Section 301(a)
    G. Title 29 (U.S.C. §185)
    H. Cary Kane Position Statement dated March 23, 2018

## I.    The Parties to this Complaint

### A.    The Plaintiff(s)

| | | |
|---|---|---|
| Name | Jahmil O. Barrett | |
| Street Address | 669 East 57th Street | |
| City and County | Brooklyn | Kings County |
| State and Zip Code | New York, 11234 | |
| Telephone Number | 347-496-2926 | |
| E-mail Address | jahmil.barrett80@gmail.com | |

### B.    The Defendant(s)

#### Defendant No. 1

| | | |
|---|---|---|
| Name | Local 804 Union (IBT) | |
| Job or Title | Labor Union | |
| Street Address | 34-21 Review Avenue | |
| City and County | Long Island City | Queens County |
| State and Zip Code | New York, 11101 | |
| Telephone Number | 718-786-5700 | |
| E-mail Address | v.perrone@teamsterslocal804.org | |

#### Defendant No. 2

| | | |
|---|---|---|
| Name | United Parcel Service Inc. (UPS) | |
| Job or Title | Corporation Service Company | |
| Street Address | 80 State Street | |
| City and County | Albany | Albany County |
| State and Zip Code | New York, 12207-2543 | |
| Telephone Number | 404-828-7825 | |
| E-mail Address | wpandiscia@ups.com | |

**II.    Basis for Jurisdiction 28 U.S.C. §1331**

Federal question

**A.** This action is brought for unlawful discharge and unfair labor practices in employment pursuant to:

1. Article 7, and Article 8 of the National Master United Parcel Service Agreement (NMA)
2. Article 12, Sections 1 & 2, and Article 18, Sections 1 & 2 of the Local 804 & UPS Supplemental Agreement to the National Master UPS Agreement (Collective Bargaining Agreement) (CBA)
3. New Yorker's Workers' Compensation Law §120
4. Labor Management Relations Act: Section 301(a)
5. Title 29 (U.S.C. §185)

**III.    The Amount in Controversy & Injury**

1.    Is more than $350,000.00 in loss wages, (*not counting interest*), exemplary damages, punitive damages, and court costs $6,603.00, because on or about May 16, 2011, Mr. Jahmil O. Barrett [herein "Plaintiff" or "Employee"] was discharge without just cause by Defendant United Parcel Service Inc., [herein "UPS" or the "Company"] in violation of Article 12, Sections 1 & 2 of the Local 804 & UPS Supplemental Agreement to the National Master UPS Agreement, and against Defendant Local 804 Union, International Brotherhood of Teamsters [herein "Local 804" or the "Union"] for failing to process Plaintiff's grievance in accordance with Article 8, and Article 18, Sections 1 & 2 of the Local 804 & UPS Supplemental Agreement to the National Master UPS Agreement, and because the union failed to invoke Article 7 of the National Master United Parcel Service Agreement [herein the "CBA"] against UPS for violating Plaintiff's rights pursuant to Article 12, Sections 1 & 2 of the CBA. As a consequence, Plaintiff was deprived of his job, salary, and allowances as a part-time pre-loader from on or about May 16, 2011 thru July 12, 2011, salary, and allowances as a part-time pre-loader from October 1, 2014 thru March 18, 2018, salary, and allowances as a full-time combination driver from March 19, 2018, and ongoing. Plaintiff also endured depression, pain, and suffering.

### IV.    Statement of Claim

1.      On July 28, 2008, Plaintiff was employed part-time by UPS as a pre-loader, loading packages onto UPS vehicles at the Company's facility located at 10401 Foster Avenue in Brooklyn. Plaintiff was also a Local 804 union member in good standing.

2.      Local 804 and UPS are parties to a collective bargaining agreement (the "CBA"). The relevant CBAs are for the periods of December 19, 2007 through July 31, 2013 (the "2007-2013 CBA," attached here as Exhibit: (A), August 1, 2013 through July 31, 2018 ("2013-2018 CBA," attached here as Exhibit: (B), and August 1, 2018 through July 31, 2023 (the "2018-2023 CBA," attached here as Exhibit: (C) The 2007-2013 CBA provides at:

3.      Article 7, ¶1 of the CBA states that "*Except in cases involving cardinal infractions under the applicable Supplement, Rider or Addendum, an employee to be discharged or suspended shall be allowed to remain on the job, without loss of pay unless and until the discharge or suspension is sustained under the grievance procedure. Notwithstanding the foregoing, any superior provisions in Supplements, Riders or Addenda shall prevail. The Union agrees it will not unreasonably delay the processing of such cases.*"

4.      Article 7, ¶3 of the CBA states in part that "*The procedures set forth in the local, state and area grievance procedure may be invoked only by the authorized Union representative or Employer*". (See Ex. A at page 19.), (See Ex. B at page 20.), and (See Ex. C at pages 20-21.)

5.      Article 12, Section 1, ¶1 of the CBA states that: "*The following shall be causes for immediate suspension or discharge of an employee: drinking or proven or admitted dishonesty. See Article 18, Section 1 (a)*".

6.      Article 12, Section 1, ¶2 of the CBA states in part that: "*In cases not involving the theft of money or merchandise an employee will remain on the job until a hearing is held with the business agent. Such hearing will take place within seventy-two (72) hours.*"

7.      Article 12, Section 2, ¶1 of the CBA states that: "*In all other cases involving the discharge or suspension of an employee, the Company will give three (3) working days' notice to the employee of the discharge or suspension and the reason, therefore. Such*

*notice shall also be given to the Shop Steward and the Local Union office. Within ten (10) days of the conclusion of the seventy-two (72) hour hearing, if the Company intends to discipline the employee, the Company shall send a written notice to the Union Hall via certified mail or UPS delivery and e-mail a copy of the notice to the Local Union. The notice must provide the reason(s), on which the intended discipline is based. Any warning notice or suspension shall not remain in effect more than nine (9) months except those warning notices issued pursuant to the so-called "Drinking Rule" covered by separate letter and incorporated by reference into this Agreement".*

8.     Article 12, Section 2, ¶2 of the CBA states that: "*Discipline shall be for just cause. For non-cardinal infractions, the employee shall be allowed to remain on the job consistent with Article 7 of the National Master Agreement, without loss of pay unless and until the discharge or suspension is sustained under the grievance procedure*".

9.     Article 18, Section 1, ¶3, sub. ¶(g) of the CBA states "*In discharge and suspension cases only, an **impartial arbitrator** shall hear the case with the UPS and the Local 804 Panel members and cast the deciding vote in the event of a deadlock*".

10.    On or about October 13, 2010, Plaintiff was injured in the line of duty at his workplace and subsequently placed on workman's compensation. For reason(s) unknown Plaintiff's workman's compensation case ended abruptly on or about May 18, 2011.

11.    On or about May 2011, Plaintiff informed his union representative, Mr. Anthony Cerulli, that Plaintiff's worker's compensation benefits had stopped for reason(s) unknown. Mr. Cerulli was the Business Agent for the Company's Foster Avenue facility until January 2016, when the new Union administration came into office. Had Mr. Cerulli investigated Plaintiff's grievance pursuant to Article 8, and Article 18, Sections 1 and 2 of the CBA, Mr. Cerulli would have discovered that UPS had discharged Plaintiff on or about May 16. 2011 without just cause in violation of Article 12, Sections 1 & 2 of the CBA. Mr. Cerulli took no action to investigate or process Plaintiff's May 2011 grievance. That is a violation of Section 8(b)(1)(A) of the National Labor Relations Act. [herein the "Act].

12.    On or about July 16, 2011, Plaintiff was informed <u>via</u> letter from UPS, dated: July 13, 2011. that he had been discharged Pursuant to Article 13, Section 9 (14) (4) of the CBA.

Article 18, Section 9 (14) (4) states that "*He/she is absent without good cause and fails to notify the Company provided, however, that before employment is terminated, the Company will send a telegram or certified letter return receipt requested giving the employee five (5) days in which to report. <u>The Union shall be notified at the same time</u>*"

13.   Although Plaintiff responded to the 5-day letters in a timely manner, even [i]f Plaintiff had not responded to UPS's 5-day letter. Plaintiff was not discharged <u>drinking</u>, <u>theft of money or merchandise</u>, and UPS has not alleged or proven that Plaintiff committed any <u>cardinal infractions</u>. Plaintiff did not admit to doing anything that amounted to any degree of <u>dishonesty</u> nor had UPS proven or alleged that Plaintiff committed any violation of the UPS's "*340 Methods and Procedures Manual*", no alleged or cited violation of UPS's "*Policy Manual*", no alleged or cited violation  of UPS's "*Code of Business Conduct Manual*" and no alleged or cited violation of UPS "*Policy Notices*", and therefore, in accordance to Article 7 of the CBA "*Plaintiff, shall be allowed to remain on the job, without loss of pay unless and until Plaintiff's discharge or suspension is sustained under the grievance procedure.* Plaintiff's May 16, 2011 discharge had not been sustained under the grievance procedure. This is a contract violation, and the union has arbitrarily failed to enforce it.

14.   On or about January 19, 2018, Plaintiff filed a complaint with the National Labor Relations Board [herein "NLRB".] against UPS for discharging Plaintiff without just cause in violation of Article 12, Sections 1 & 2 of the CBA and against Local 804 Union, for failing to process Plaintiff's grievance in accordance with Article 8, and Article 18, Sections 1 & 2 of the CBA, for failing to invoke Article 7 of the CBA against UPS for violating Plaintiff's rights to remain on the job without loss of pay pursuant to Article 12, Sections 1 & 2 of the CBA.

15.   On April 4, 2018, Plaintiff filed a civil complaint in the United States District Court for the Eastern District of New York (Brooklyn) against UPS alleging that on July 13, 2011, UPS discharged Plaintiff without just cause in violation of Article 12, Sections 1 & 2 of the CBA and against Local 804 for failing to process Plaintiff's grievance in accordance with Article 8, and Article 18, Sections 1 & 2 of the CBA, and for failing to invoke Article 7 of the CBA against UPS for violating Plaintiff's right to remain on the job without loss

of pay pursuant to Article 12, Sections 1 & 2 of the CBA. Complaint Number: 1:18-CV-02046-MKB-LB.

16.    On or about April 2020, during the discovery phase of Plaintiff's federal civil complaint the workman's compensation board informed Plaintiff by way of [demand for documents], that Plaintiff's benefits had been stopped early because UPS informed the workman's compensation board that Plaintiff had been discharged effective on or about May 16, 2011, in violation of Article 12, Sections 1 & 2 of the CBA even though Plaintiff was actively on workman's compensation, under the doctor's care, and had not been cleared to return to work by the Workman's Compensation Board until August 11, 2011, which is a violation of the New Yorker's Workers' Compensation Law §120. Under the New Yorker's Workers' Compensation Law §120, an Employer may not fire or otherwise discriminate against an Employee who has claimed or attempted to claim workers' compensation benefits. See Exhibit: (D-D1).

17.    As noted above, the applicable CBA provides that when an employee is discharged or suspended Plaintiff shall be issued a notice of discharge explaining the reason(s) why Plaintiff was being discharged, and that Plaintiff shall be allowed to remain on the job without loss of pay until Plaintiff's grievance is sustained under the grievance procedure pursuant to Article 8, and Article 18, Sections 1 & 2 of the CBA. See Exhibit: (B2-B9), and (B29-B38). Plaintiff was not allowed to remain on the job without loss of pay as a part-time pre-loader from on or about May 16, 2011 thru July 12, 2011, as a part-time pre-loader from October 1, 2014 thru March 18, 2018, and as a full-time combination driver from March 19, 2018, and ongoing. This is a contract violation, and the union have failed to enforce.

18.    Article 12, Section 1, of the CBA states in part that "*The following shall be causes for immediate suspension or discharge of an employee: drinking or proven or admitted dishonesty. See Article 18, Section 1(a). In cases not involving the theft of money or merchandise an employee will remain on the job until a hearing is held with the business agent. Such hearing will take place within seventy-two (72) hours*".

19.   In the case of the May 16, 2011, discharge it is an undisputed material fact that Plaintiff was **not** discharged for <u>drinking</u>, or for <u>theft of money or merchandise</u>, and the Company has not alleged that Plaintiff committed any <u>cardinal infraction(s)</u>. Plaintiff did **not** admit to doing anything that amounted to any degree of <u>dishonesty</u> nor had the Company proven or alleged that Plaintiff committed any violation of the Company's "*340 Methods and Procedures Manual*", no alleged or cited violation of the Company's "*Policy Manual*" no alleged or cited violation of the Company's "*Code of Business Conduct Manual*", and no alleged or cited violation of the Company's "*Policy Notices*". Therefore, Plaintiff's discharge was unjust. This is a contract violation that the union have failed to enforce.

20.   Article 12, Section 2, ¶2 of the CBA states in part that "*Within ten (10) days of the conclusion of the seventy-two (72) hour hearing, [i]f the Company intends to discipline the employee, the Company shall send a written notice to the Union Hall via certified mail or UPS delivery and e-mail a copy of the notice to the Local Union.*"

21.   It is an undisputed material fact that in the case of the May 16, 2011 wrongful discharge, the Company did not send a written notice to the Union Hall via certified mail or UPS delivery, and/or e-mailed a copy of the notice of discharge to the Local Union. UPS did not send a written notice to the Union Hall or Plaintiff via certified mail or UPS delivery, and/or e-mailed a copy of the notice of discharge to the Local Union. This is a contract violation that the union have failed to enforce.

22.   Article 12, Section 2, ¶3 of the CBA states in part that "*Discipline shall be for just cause. For non-cardinal infractions, the employee shall be allowed to remain on the job consistent with Article 7 of the National Master Agreement, without loss of pay unless and until the discharge or suspension is sustained under the grievance procedure.*" Plaintiff never received a notice of discharge for May 16, 2011, and therefore, Plaintiff's May 16, 2011 discharge was without just cause. This is a contract violation that the union have failed to enforce.

23.   It is an undisputed material fact that in the case of the May 16, 2011 wrongful discharge the Company did not allow Plaintiff to remain on the job consistent with Article 7 of the CBA without loss of pay unless and until the discharge or suspension was sustained under

the grievance procedure pursuant to Article 8, and Article 18, Sections 1 & 2 of the CBA. This is a contract violation, and the union has failed to enforce this CBA violation by failing to invoke Article 7 of the CBA against UPS for violating Article 12, Sections 1 & 2 of the CBA.

24.     On May 10, 2013, although the statute of limitations had expired for the union to process Plaintiff's July 2011 grievance the Union filed a demand for arbitration on Plaintiff's behalf. The Company did not challenge the demand for arbitration on the basis of timeliness, arbitrability, or any other issue.

25.     On October 1, 2014, UPS Labor Relations Manager, Mr. Daniel Daly, and Local 804 union representative, Mr. Cerulli, made a settlement agreement for Plaintiff that would allow Plaintiff to be reinstated by UPS as a full-time combination driver in exchange for withdrawing Plaintiff's July 2011 grievance, and forfeiting the back pay from July 13, 2011 through October 1, 2014, that was owed to Plaintiff after UPS violated Plaintiff's rights on July 13, 2011, pursuant to Article 12, Sections 1 & 2 of the CBA. Plaintiff was not aware of the terms and conditions of said settlement agreement until March 18, 2018, after Plaintiff filed a complaint on or about January 19, 2018 with the NLRB against the Union.

26.     On or about March 19, 2018, Plaintiff fulfilled his part of the October 1, 2014 settlement agreement by having his driver's privileges restored. Plaintiff was told by NLRB investigator, Mr. Matthew Knowles, to expect a telephone call from UPS for reinstatement pursuant to the October 1, 2014 settlement agreement. UPS never called Plaintiff! At that time, the Union knew or should have known that UPS defaulted on the settlement agreement after UPS failed to reinstate Plaintiff pursuant to the October 1, 2014 settlement agreement. The Union took no action pursuant to Article 8, and Article 18, Sections 1 & 2 of the CBA against UPS for violating Plaintiff's rights pursuant to Article 7, and Article 12, Section 1 & 2 of the CBA. As a consequence, Plaintiff lost his place of employment and back pay as a part-time pre-loader from May 16, 2011 thru July 12, 2011, as a part-time pre-loader from October 1, 2014 thru March 18, 2018, as a full-time combination driver from March 19, 2018, and ongoing.

27.   On March 23, 2018, Cary Kane LLP, stated in the union's "unsworn position statement" to the NLRB that the union and UPS made a settlement agreement that would allow Plaintiff to be reinstated at UPS, as a full-time combination delivery driver.

28.   On March 31, 2022, the federal court based on the evidence and testimony determined that "*It is undisputed that through Cerulli's negotiations, UPS offered Plaintiff [Barrett] an opportunity to return to UPS for a full-time position that had a higher seniority status than Plaintiff's previous occupation. (UPS 56.1 ¶¶ 27–29; Pl.'s Counter to UPS 56.1 ¶ 29; Pl.'s Opp'n Aff. ¶ 12.)*"

29.   On May 13, 2022, the court entered a final judgement in Plaintiff's civil complaint.

30.   On June 22, 2022, Plaintiff mailed a letter to UPS demanding that UPS honor the October 1, 2014 settlement agreement. UPS never issued Plaintiff a "notice of discharge" for job abandonment on or after the October 1, 2014 settlement agreement was made, UPS did not reinstate Plaintiff pursuant to the October 1, 2014 settlement agreement, and UPS did not respond to Plaintiff's June 22, 2022 letter.

31.   On July 6, 2022 UPS District Labor Relations Manager, Mr. Warren Pandiscia, informed Local 804 Director of Operations, Mr. Joshua S. Pomeranz, that UPS would not reinstate Plaintiff pursuant to the October 1, 2014 settlement agreement, and UPS refused to give the union or Plaintiff a reason(s) for refusing to honor the agreement.

32.   On July 8, 2022, Plaintiff submitted a signed grievance with a "statement of facts", and exhibits: (A thru H6), detailing how UPS violated Plaintiff's rights pursuant to Article 12, Sections 1 & 2 of the CBA from on or about May 16, 2011 thru July 12, 2011, from October 1, 2014 thru July 7, 2022, and ongoing.

33.   On July 20, 2022, for reason(s) unknown the union have arbitrarily discarded Plaintiff's signed July 8, 2022, grievance and substituted it with an inadequately written, unsigned July 7, 2022, grievance that failed to identify the contractual violation that Plaintiff alleged against UPS. By arbitrarily discarding Plaintiff's grievance that action has restrained and/or coerced Plaintiff in the exercise of the rights guaranteed him in Section 7 of the Act.

34.  On June 19, 2020, UPS full-time package delivery driver, Mr. Josh D. Findley, (herein "Findley") was discharged by UPS in violation of Article 12, Sections 1 & 2 of the CBA. Findley was not discharged for <u>drinking</u>, or for <u>theft of money or merchandise</u>, and the Company has not alleged that Findley committed any <u>cardinal infraction(s)</u>. Findley did not admit to doing anything that amounted to any degree of <u>dishonesty</u> nor had the Company proven or alleged that Findley committed any violation of the Company's "*340 Methods and Procedures Manual*", no alleged or cited violation of the Company's "*Policy Manual*", no alleged or cited violation of the Company's "*Code of Business Conduct Manual*", and no alleged or cited violation of the Company's "*Policy Notices*". Therefore, Findley should have been allowed to remain on the job without loss of pay pursuant to Article 7, and Article 12, Sections 1 & 2 of the CBA. Plaintiff's discharge is identical to Findley's discharge.

35.  In the Findley matter, Findley was not allowed to remain on the job consistent with Article 12, Sections 1 & 2 of the CBA, without loss of pay unless and until the discharge or suspension is sustained under the grievance procedure. On or about June 29, 2020, Union representative, Mr. Anthony Cerulli, informed Findley in a recorded telephone conversation that the union for reason(s) unknown would not represent Findley in the grievance process however, as a consequence Findley sustained a loss of pay from June 19, 2020 thru June 29, 2020, because UPS violated Findley's right pursuant to Article 12, Sections 1 & 2 of the CBA.

36.  On August 13, 2020, a complaint was filed against UPS, and the union with the NLRB case number: 29-CA-265499, alleging that UPS violated Findley's rights pursuant to Article 12, Sections 1 & 2 of the CBA, and that the union had failed to invoke Article 7 of the CBA against UPS. As a consequence, UPS entered into a private settlement agreement with Findley to pay Findley the money owed to him under Article 12,  Sections 1 & 2 of the CBA, and the union represented Findley to the point in which UPS paid Findley the money owed. The NLRB informed UPS that the charge was subject to reinstatement for further processing if Findley requested reinstatement and supports his request with evidence of the Employer's non-compliance with the undertaking in the private agreement. See Exhibit: (E).

37.     In Plaintiff's case, it is an undisputed material fact that on or about May 16, 2011, UPS discharged Plaintiff in violation of Article 12, Sections 1 & 2 of the CBA, and the union simply failed to invoke Article 7 of the CBA against UPS for violating Plaintiff's rights pursuant to Article 12, Sections 1 & 2 of the CBA. However, because the union processed Plaintiff's grievance in a perfunctory manner, Plaintiff has been discharged without pay, and have been waiting for his arbitration hearing since May 16, 2011, and ongoing.

38.     Although Article 7, ¶1 of the CBA states that "*The union agrees it will not unreasonably delay the processing of such cases. [discharge and suspensions cases]*", Article 18, Section 2, ¶6, sub. ¶(b) states that "*the parties [UPS and Local 804] agree that all time limits set forth in Section 2 hereto shall be strictly construed*", and Article 18, Section 2, ¶ (2) of the CBA states "*Cases will be scheduled for arbitration on a first-in, first-out basis, based on the date the demand for arbitration was filed. Therefore, **unless party(s) agree to expedite a case**, all cases will be scheduled in chronological order – the earliest case tried first.*"

39.     Plaintiff has been told by the union that it will take an additional 3-4 years for Plaintiff's case to be heard by the Local 804/UPS Panel.

40.     In the Findley matter, Findley received restitution in less than 40-days after Findley filed his NLRB complaint against the Union and UPS. In Plaintiff's case because the union and UPS have acted in bad faith, and arbitrarily discriminated against Plaintiff by not expediting Plaintiff's UPS/Local 804 Panel hearing. Plaintiff has been waiting for restitution ever since May 16, 2011.

41.     As of October 2022, and ongoing for reason(s) unknown the union has arbitrarily refused to file a request for an Arbitrator with the American Arbitration Association (AAA) pursuant to Article 18, Section 1, ¶3, sub. ¶(g) of the CBA to process Plaintiff's July 8, 2022, signed grievance at a UPS/Local 804 Panel.

42.     The Union as a matter of law have the authority to file a "pure" section 301 action suit "*which is a suit brought directly by a union against an employer to enforce the CBA.*" Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638, 227 F.3d 29, 34 (2d Cir. 2000).

43.   On September 20, 2022, the union stated in an email to Plaintiff that: "*If we [the union] could afford to take UPS to federal court for every violation- we would. But the reality is that the union would be bankrupt very quickly if we upheld the contract in this way.*" Plaintiff's question to the union was: "*Is it a reality that UPS is flagrantly violating the CBA, and the rights of members in that huge amount as to potentially bankrupt the union?*" Please reply. The union replied: "*Yes. UPS violates the CBA and law to the point that if we took every single violation to federal court we would be bankrupted. That is why we negotiated and use an **internal** grievance procedure.*" Really!

44.   The union for reason(s) unknown have arbitrarily refused to file a complaint with the NLRB against UPS for violating the Collective Bargaining Agreement, and for failing to bargain in good faith pursuant to Section 8(b)(3) of the Act. Plaintiff informed the Union that making a complaint at the NLRB against UPS would not bankrupt the union. The union stated that for reason(s) unknown they would not be filing a complaint with the NLRB against UPS.

45.   Section 8(b)(1)(A) of the Act makes it unlawful for a labor organization or its agents "*to restrain or coerce employees in the **exercise of the rights guaranteed them in Section 7 of the Act** provided that this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein.*" For example, a <u>**union may not breach their duty to fairly represent employees**</u>

46.   Article 7, ¶3 of the CBA states in part that "*The procedures set forth in the local, state and area grievance procedure may be invoked only by the authorized Union representative*".

47.   A union, as "the exclusive bargaining representative of the employees" of a bargaining unit, has "a statutory duty fairly to represent all of those employees, both in its collective bargaining with [the employer] ... and in its <u>**enforcement** of the resulting collective</u> <u>**bargaining agreement.**</u>" Vaca v. Sipes, 386 U.S. 171, 177 (1967) (citations omitted). A union's duty of fair representation "arises from the National Labor Relations Act itself." United Steelworkers of America, AFL-CIO-CLC v. Rawson, 495 U.S. 362, 373 (1990). "Under this doctrine, the exclusive agent's statutory authority to represent all members of

-14-

a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."

48.   In this matter, the union has agreed with Plaintiff that UPS have violated Plaintiff's contractual right to be reinstated as a full-time combination driver however, the union and the NLRB have failed its enforcement of the resulting October 1, 2014, collective bargaining settlement agreement.

49.   In Plaintiff's case, the union has arbitrarily failed in its obligation to serve the interests of all members without hostility or discrimination towards Plaintiff, and the union has failed to exercise its discretion with complete good faith and honesty in its conduct by failing to file a complaint with the NLRB or Civil Court against UPS for violating the CBA, and for bargaining in bad faith.

50.   Although initially in May 2013, the Company did not challenge the timeliness, arbitrability, or any other issues that allowed the Union to process Plaintiff's July 2011, grievance there is no evidence that the Company will not challenge the timeliness, arbitrability, or any other issues in the May 16, 2011 discharge, and the Union's July 20, 2022 grievance.

51.   The union have not expedited Plaintiff's grievance procedure pursuant to the CBA. The union took 54-months to file a demand for a UPS/Local 804 panel hearing without any reasonable explanation as to why it took that long to file, and the union has informed Plaintiff that there will be an additional 3- or 4-year waiting period while the union wait for a panel hearing.

52.   Local 804 has breached their duty of fair representation owed to Plaintiff by arbitrarily discarding Plaintiff's July 8, 2022, signed grievance, and by arbitrarily refusing to take any reasonable enforcement action pursuant to Article 8, and Article 18, Sections 1 & 2 of the CBA, and by failing to invoke Article 7 of the CBA against UPS for violating Plaintiff's right to remain on the job with pay until his arbitration is decided. UPS discharged Plaintiff without just cause in violation of Article 12, Sections 1 & 2 of the CBA, and both Local 804, and UPS have violated the Labor Management Relations Act: Section 301, Title (29

U.S.C. §185) To prevail, the plaintiff must prove each of the following by a <u>preponderance</u> of the evidence: See Exhibit: (F) & (G), respectively.

    **a.** That the plaintiff was discharged from employment by the employer.

    **b.** That such discharge was without "just cause," and

    **c.** That the Union breached its duty to fairly represent Section 8(b)(1)(A) of the Act. the plaintiff's interests under the Collective Bargaining Agreement. (CBA)

**V.**    **Relief**

    **1.**    That this complaint be treated as a Rule 60 motion for complaint number 18-CV-02046 and/or a new complaint and that Plaintiff be reinstated to his place of employment, that Plaintiff be reimbursed for all loss wages, legal fees, compensatory and exemplary damages, any other cost that the Court see fit, and that Plaintiff be made whole again.

**VI.**    **Exhaustion of Federal Administrative Remedies**

    **1.**    On or May 2011, Plaintiff verbally informed Local 804 union representative, Mr. Anthony Cerulli that his workers' compensation benefits stopped. Mr. Cerulli took no action.

    **2.**    On or about July 2011, Plaintiff informed Mr. Cerulli that he received a notice of discharge from UPS dated July 13, 2011.

    **3.**    On or about October 11, 2017, Plaintiff received a flyer which was distributed to UPS employees by Mr. Bennie Smith, Jr regarding unfair labor practices. From October 11, 2017 thru January 2018, Plaintiff, and Mr. Smith made several recorded telephone calls to Local 804's representatives without success. Plaintiff at that time realized that Local 804, had no intentions of processing Plaintiff's grievance so…

    **4.**    On or about January 19, 2018, Plaintiff filed a complaint with the National Labor Relations Board (NLRB) against Defendant Local 804 for violating Plaintiff's right to fair representation in violation of Section 8(b)(1)(A) of the Act and against Defendant UPS in violation of Section 8(b)(2) of the Act.

Case Number: 29-CB-213209. Case held in obeyance pending outcome of this civil action.

5.  On April 4, 2018, Plaintiff filed a civil complaint number: 18-CV-2046 against UPS for discharging Plaintiff without just cause, and against the union for failing to represent Plaintiff on or about July 13, 2011 pursuant to Article 8, and Article 18 of the CBA.

6.  On April 3, 2020, Plaintiff attempted to file a sixth amended civil complaint in federal court [ECF No. 114] to include the newly discovered evidence that Plaintiff had been discharge secretly by UPS on or about May 16, 2011, that as of April 2020, UPS had still not reinstated Plaintiff pursuant to the settlement agreement, and that the union had taken no action against UPS for defaulting on the October 1, 2014 settlement agreement.

7.  On April 6, 2020 Plaintiff's assistant Mr. Bennie Smith, Jr sent a letter to the NLRB to inform the board that UPS had secretly discharge Plaintiff on or about May 16, 2011, that the July 13, 2011 discharge of Plaintiff was made to conceal the fact that UPS had actually discharged Plaintiff prior to July 13, 2011. Mr. Smith, also wanted to inform the board that the union had not taken any action against UPS for failing to reinstate Plaintiff pursuant to the October 1, 2014 settlement agreement. The NLRB never responded to that letter. The NLRB did not consider in Plaintiff's denial of case number: 29-CB-213209, that the union had not enforced the settlement agreement. Plaintiff filed an appeal to the NLRB Office of Appeals.

8.  On April 24, 2020, UPS and the union filed their opposition in federal court to Plaintiff's attempt to file a sixth amended complaint.

9.  On May 1, 2020, Plaintiff filed an objection to UPS, and the Union's opposition to Plaintiff's motion to file a sixth amended complaint.

10. On or about May 14, 2020, Plaintiff's motion to file a sixth amended complaint was denied by the court pursuant to 28 U.S.C. § 636(b).

11.     On August 18, 2022, NLRB case number: CB-29-213209 was dismissed by the board, Plaintiff filed an appeal.

12.     On July 13, 2022, Plaintiff filed a complaint with the NLRB against UPS for failing to bargain in good faith pursuant to Section 8(b)(3) of the Act. Case pending. Case number: 29-CA-299223. Case under investigation.

13.     On July 25, 2022, Plaintiff filed a complaint with the NLRB against Local 804 for failing to process Plaintiff's grievance pursuant to Article 8, and Article 18, Sections 1 & 2 of the CBA, in its enforcement an October 1, 2014 settlement agreement. 29-CB-299973. Case under investigation.

14.     On September 12, 2022, Plaintiff file a complaint with the NLRB against UPS for violating Plaintiff's rights pursuant to Article 12, Sections 1 & 2 of the CBA. Case number: 29-CA-303096. Case under investigation.

15.     The names of individual UPS supervisors, Local 804 Union representatives, and physical evidence involved in this complaint will be provided pursuant to Federal Rules of Civil Procedure to Rule **26(a)(1)**, and Rules **26** thru **37**.

## VII.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of **Rule 11.**

## C.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: November 11, 2022

Signature of Plaintiff

Printed Name of Plaintiff Jahmil O. Barrett



669 E57th Street
Brooklyn, NY 11234

RECEIVED
NOV 1 1 2022
PRO SE OFFICE

FILED
CLERK

2022 NOV 11 PM 2: 13

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

November 08, 2022

Court Clerk
United States District Court
Eastern District of New York (Brooklyn)
225 Cadman Plaza East
Brooklyn, NY 11201

Reference: Jahmil O. Barrett -V- United Parcel Service Inc. (UPS) & Local 804 Union (IBT),

Dear Clerk:

I have submitted the enclosed complaint against Local 804 Union and UPS, and I have also enclosed the $403.00 court filing fee. I am submitting this new complaint because during my prior civil complaint case number: 18-CV-02046 against Local 804 Union, and UPS. I alleged that UPS discharged me on July 13, 2011 without just cause and that my union did not represent me from July 11, 2011 thru January 2018.

Case number: 18-CV-02046 was dismissed after the evidence showed that the union did represent me by making a settlement agreement with UPS that would allow me to return to work as a full-time combination driver. The court did not consider whether or not the union enforced the settlement agreement in its final judgement. On June 2022, UPS defaulted on the settlement agreement and my union has failed to enforce the settlement agreement therefore, I am submitting this new complaint to reopen my old case and/or treat this complaint as a new complaint. I will pick up the subpoena on Monday, November 14, 2022. Thank you.

Respectfully Submitted,

Jahmil Barrett

Mr. Jahmil O. Barrett.
347-496-2926
Pro Se

Copy: File.

Jahmil Barrett
669 East 57th street
Brooklyn , N.Y. 11234

FILED
CLERK
2022 NOV 11 PH 2: 13
U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

United States District Court
225 Cadman Plaza
Brooklyn, N.Y. 11201