UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JAHMIL O. BARRETT,

*Plaintiff*,

– against –

LOCAL 804 UNION BROTHERHOOD OF
TEAMSTERS (IBT) and UNITED PARCEL
SERVICES INC. (UPS),

*Defendants.*

**MEMORANDUM AND
ORDER**
22-CV-06925 (NCM)(LB)

**NATASHA C. MERLE**, United States District Judge:

*Pro se* plaintiff Jahmil O. Barrett brings this action against defendants Local 804
Union Brotherhood of Teamsters ("Local 804") and United Parcel Services Inc. ("UPS")
for unlawful discharge from employment and unfair labor practices. Second Amended
Complaint, ECF. No. 38 ("SAC"). Defendants bring separate motions to dismiss,[1] and
plaintiff opposes the motions.[2] For the reasons stated below, defendants' motions to
dismiss are granted. The Court also denies UPS's request that plaintiff be required to seek
leave from the Court before filing any future cases against UPS.

## BACKGROUND

In 2008, plaintiff was a part-time employee of UPS, working as a pre-loader at
UPS's Foster Avenue facility in Brooklyn. SAC ¶ 21. He was also a member in good
standing of Local 804. SAC ¶ 21. Plaintiff was injured at his workplace and placed on
workers' compensation in 2010. SAC ¶ 22. Plaintiff stopped receiving workers'

---

[1]      UPS Mot. Dismiss, ECF No. 44; Local 804 Mot. Dismiss, ECF No. 48.
[2]      Pl.'s Consolidated Opp., ECF No. 52.

compensation and was no longer employed by UPS in 2011. SAC ¶¶ 24, 34. That same year, plaintiff filed a wrongful termination grievance against UPS, which Local 804 settled on his behalf in 2014. SAC ¶ 42. The settlement agreement allowed plaintiff to return to work as a full-time combination driver in exchange for withdrawing his 2011 grievance and forfeiting back pay. SAC ¶ 42. Plaintiff did not resume employment at UPS at that time.[3] *See* SAC ¶ 47.

In 2018, plaintiff filed a lawsuit asserting employer and union violations of Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"), and unfair labor practices in connection with UPS's 2011 termination of plaintiff and Local 804's representation of him in the grievance process. *Barrett v. Loc. 804 Union (IBT)*, No. 18-CV-2046 (MKB), 2022 WL 992525, at *1 (E.D.N.Y. Mar. 31, 2022) ("*Barrett I*"). *Barrett I* ended with the Court granting motions for summary judgment in favor of the same defendants named in the present case. *Id.*

After *Barrett I*, plaintiff again pursued employment at UPS in 2022. SAC ¶ 55. UPS denied plaintiff's employment application. SAC Ex. B2. Local 804 filed a grievance against UPS on plaintiff's behalf, asserting that the denial of employment ran counter to the 2014 "settlement affording him [the] opportunity" to be hired again. *Id.*

On November 11, 2022, plaintiff filed the present action,[4] asserting that Local 804 and UPS violated Section 301 of the LMRA in 2011 and again in 2022.[5]

---

[3]     A detailed recitation of the facts relating to plaintiff's 2011 employment termination and 2014 settlement agreement is included in *Barrett I*.

[4]     The present action is hereinafter referred to as "*Barrett II*."

[5]     In addition to filing lawsuits in 2018 and 2022, plaintiff filed five charges with the National Labor Relations Board, alleging that UPS wrongfully terminated his employment and Labor 804 breached its duty of fair representation. *See* SAC ¶¶ 42, 85–87 (noting January 19, 2018, NLRB charge, July 13, 2022, NLRB charge, July 25, 2022,

**STANDARD OF REVIEW**

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all factual allegations contained in the complaint are assumed to be true, this rule does not apply "to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

The Court "liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

**DISCUSSION**

I.    Preclusion of Claims Raised in *Barrett I*

Both defendants assert *res judicata*, also known as claim preclusion, as a defense to plaintiff's allegations. Specifically, defendants argue that plaintiff's claims that they violated Section 301 of the LMRA and the collective bargaining agreement ("CBA") are precluded because those claims were previously litigated and ruled upon in *Barrett I*.

The *res judicata* principle "holds that 'a final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in

_____

NLRB charge, and September 12, 2022, NLRB charge); Motion to Stay Proceedings, ECF No. 57 (describing December 1, 2023, NLRB charge).

3

that action.'" *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). To prove that *res judicata* applies, a party must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiff[] . . . ; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Id*. Here, defendants have established these factors.

### A. *Plaintiff Involvement and Adjudication on the Merits in* Barrett I

First, it is indisputable that *Barrett I* involved the same plaintiff, Mr. Barrett. In fact, the summary judgment decision in *Barrett I* involved the same three parties currently before the Court in *Barrett II*: Mr. Barrett, Local 804, and UPS. *Compare Barrett I with* SAC.

Second, plaintiff's claims in *Barrett I* were adjudicated on the merits when the Court granted summary judgment in defendants' favor. *Barrett I* at *1; *see Weston Funding Corp. v. Lafayette Towers, Inc.*, 550 F.2d 710, 713–15 (2d Cir. 1977) (finding that summary judgment is an adjudication on the merits). In *Barrett I*, plaintiff asserted that Local 804 and UPS violated the CBA and Section 301 of the LMRA. Specifically, he alleged that he was unlawfully discharged from his employment at UPS in 2011, and that Local 804 then engaged in unfair labor practices during the grievance process for that termination. *Barrett I* at *1.

The Court found plaintiff's claim, also called a hybrid section 301/duty of fair representation claim ("hybrid claim"), unviable. *Barrett I* at *9. The Court highlighted that a hybrid claim requires a plaintiff to prove (i) that they were not fairly represented by the union and (ii) that an employer wrongfully discharged them. *Id*. at *9. In analyzing whether Local 804 breached its duty of fair representation, the Court reviewed Local

804's actions after plaintiff filed a wrongful termination grievance against UPS. *Id.* at *6–7. The Court examined the full timeline of the grievance process: the initial submission, demands for arbitration, settlement negotiations, and post-settlement implementation of the settlement agreement. *Id.* at *6, 9.

The Court found that "[p]laintiff was not entitled to a particular resolution of his grievance and Local 804 was well within its discretion to approve of the settlement and to withdraw the grievance." *Id.* at *7. The Court granted Local 804's motion for summary judgment after finding that the Union's actions were reasonable, and failed to rise to the level of arbitrariness, discrimination, or bad faith required for a breach of duty of fair representation. *Id.* at *7–9. Since plaintiff's hybrid claim was defeated by the finding that Local 804 did not breach its duty of fair representation, the Court also granted UPS's motion for summary judgment, though it refrained from addressing whether UPS violated the CBA when it terminated plaintiff's employment. *Id.* at *9.

### B. *Claims Asserted in* Barrett I *and* Barrett II

The majority of claims raised by plaintiff in the instant action were raised or could have been raised in *Barrett I*. In the present action, plaintiff raises three claims:[6] a hybrid claim for the 2011 discharge and grievance process,[7] a claim for misrepresentations by both the Union and UPS during the 2011 discharge and grievance process,[8] and a hybrid

---

[6]     In his opposition brief, plaintiff raises a new claim that defendants conspired throughout the 2011 grievance process by providing false accounts of events, including a false date of his discharge. Pl.'s Consolidated Opp., ECF No. 52 ¶ 4. Although courts may consider factual allegations raised by *pro se* plaintiffs in opposing papers, *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013), the Court refrains from considering plaintiff's assertions of conspiracy because they are conclusory and would fail to state a claim even had conspiracy been asserted within his complaint. *See Iqbal*, 556 U.S. at 678.

[7]     *See generally* SAC.

[8]     *See* SAC ¶¶ 37, 44, 58.

claim for the 2022 employment denial and grievance process.[9] Both claims relating to plaintiff's 2011 discharge—the hybrid claim and the claim of misrepresentations by defendants—were fully litigated, considered, and rejected by the Court in *Barrett I*.[10] *See Barrett I* at *7–9.

As discussed above, plaintiff litigated his hybrid claim for the 2011 discharge and grievance process, resulting in the Court granting defendants' motions for summary judgment. *See Barrett I* at *7–9; *see also supra* I.A.

Additionally, plaintiff alleges that defendants made misrepresentations throughout the 2011 grievance process. *See* SAC ¶¶ 37, 44, 58. Even assuming these allegations state a claim independent from plaintiff's hybrid claim, the judgment in *Barrett I* still precludes it. A claim is barred when it arises from the same transaction as or shares a common nucleus of operative facts with the earlier action, whether or not it was fully raised therein. *See Lucky Brand Dungarees v. Marcel Fashions Grp.*, 140 S. Ct. 1589, 1594–95 (2020) (citations and internal quotation marks omitted). That is the case here.

Plaintiff raises a number of arguments concerning alleged misrepresentations by defendants, including that the July 2011 date of discharge was meant to "conceal" a May 2011 wrongful termination and that Local 804 acted "disingenuous[ly]" and attempted to "mislead" plaintiff with respect to Local 804's representation in the 2011 grievance process. These allegations arise from the same transaction litigated in *Barrett I*. *See* SAC ¶¶ 37, 44, 58. Furthermore, in *Barrett I*, the Court *did* consider whether defendants had

---

[9]    *See* SAC ¶¶ 59, 72–73.
[10]    Though plaintiff's hybrid claim relating to his 2022 denial of employment was not adjudicated in *Barrett I*, it is still due to be dismissed as it fails to state a claim for relief, as discussed below. *See infra* at II.

engaged in either acts that were "fraudulent, deceitful or dishonest" or acts of active concealment, and found no evidence in the record to support this allegation. *Barrett I* at *6. The Court found that plaintiff's conclusory allegations concerning Local 804 were without merit because they were not supported by evidence that the Union acted in bad faith. *Id.* at 7–8.

Accordingly, the Court grants defendants' motions to dismiss plaintiff's (i) hybrid claim and (ii) claim of defendants' alleged misrepresentations related to his 2011 termination.

## II.   Plaintiff's 2022 Employment Denial Claim

Plaintiff also alleges a hybrid claim related to UPS's denial of his 2022 employment application: that UPS wrongfully denied his application and that Local 804 breached its duty to represent plaintiff's resulting grievance. SAC ¶¶ 59, 72–73.

An "employee may sue the employer, the union, or both in a hybrid § 301/fair representation claim; to prevail the employee must not only show [his] discharge was contrary to the contract, but must also carry the burden of demonstrating breach of duty by the [u]nion." *Carrion v. Enter. Ass'n, Metal Trades Branch Loc. Union 638*, 227 F.3d 29, 33 (2d Cir. 2000) (internal citation and quotation omitted). Because plaintiff fails to plausibly allege that Local 804 breached its duty of fair representation, a necessary element of a hybrid claim, this claim must fail.

### A.   Local 804's Representation of Plaintiff for 2022 Grievance

Plaintiff claims that Local 804 breached its duty of fair representation throughout the proceedings following his 2022 employment denial. SAC ¶¶ 72–73. However, plaintiff's conclusory statements as to this allegation do not contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

7

"The duty of fair representation is a statutory obligation under the [National Labor Relations Act], requiring a union to serve the interests of all members without hostility or discrimination . . ., to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (internal citation and quotation omitted). A union breaches its duty of fair representation when its actions regarding a member are "arbitrary, discriminatory, or taken in bad faith." *Id.* at 388. A plaintiff who only asserts conclusory allegations or "mere negligence" by a union in its enforcement of a collective bargaining agreement will not succeed in stating a claim for relief. *See McGovern v. Loc. 456, Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen & Helpers of Am., AFL—CIO*, 107 F. Supp. 2d 311, 320 (S.D.N.Y. 2000) ("Conclusory and vague allegations are too speculative to support a claim for breach of the duty of fair representation.").

A union's actions are arbitrary if "the union's behavior is so far outside a wide range of reasonableness as to be irrational" given the factual and legal landscape at the time of the union's actions. *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010). A union's actions may also be arbitrary if it "ignores or perfunctorily presses a meritorious claim." *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 16 (2d Cir. 1993). A union member does not have the absolute right to have his grievance arbitrated, but the union cannot act arbitrarily in deciding whether a grievance should be arbitrated. *Vaca v. Sipes*, 386 U.S. 171, 191 (1967).

To plausibly allege bad faith, the plaintiff must allege the union's actions were "fraudulent, deceitful or dishonest." *See White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001). "[T]he duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a

grievance due to error in evaluating the merits of the grievance." *Cruz v. Loc. Union No. 3 of Int'l Bhd. Of Elec. Workers*, 34 F.3d 1148, 1153–54 (2d Cir. 1994).

Plaintiff makes several unsupported statements and legal conclusions to support his claim against Local 804: the Union made a "disingenuous demand" for a panel, SAC ¶ 58; "arbitrarily refused" to request an arbitrator, SAC ¶ 63; "arbitrarily refused to file a complaint with the NLRB against UPS," SAC ¶ 65; and "arbitrarily failed in its obligation to serve the interests of all members without hostility or discrimination towards Plaintiff." SAC ¶ 73. Plaintiff further asserts that the Union should have made an arbitration demand and sued UPS in court. SAC ¶¶ 57, 61. The only supporting factual allegation that plaintiff makes in conjunction with these statements is that Local 804 "took 54 months to file" its UPS/Local 804 Panel demand. SAC ¶ 74. However, plaintiff's time calculation contradicts other assertions, namely that the employment denial occurred in June 2022, SAC ¶ 55, and the Panel was requested, at the latest, one month later in July 2022. SAC Ex. B.

Local 804 acted reasonably in submitting plaintiff's grievance within a month of the employment application denial, raising how that denial might implicate the 2014 settlement agreement, SAC Exs. B2, B8, and requesting a UPS/Local 804 Panel to resolve the issue. SAC Ex. B. Indeed, given that the same parties were previously able to resolve plaintiff's grievance, Local 804's attempt to resolve this grievance outside of arbitration was far from arbitrary. Plaintiff has alleged no facts by which the Court could find the union's actions "irrational." *See Vaughn*, 604 F.3d at 709. Accordingly, plaintiff has failed to plausibly allege that Local 804's actions were arbitrary or exercised in bad faith.

Nor do plaintiff's allegations support a claim that Local 804 acted with "improper intent, purpose or motive." *See id.* at 709–10 (recognizing that bad faith requires proof

that the union acted with "an improper intent, purpose, or motive"). Plaintiff's conclusory allegations that, for example, the Union made a "disingenuous demand" for a UPS/Local 804 Panel, SAC ¶ 58, and "arbitrarily refused" to request an arbitrator, SAC ¶ 63, are inadequate. Without supporting facts, the Court cannot infer improper intent from Local 804's decision to pursue Panel resolution of plaintiff's grievance before pursuing arbitration. This is especially true here, where pursuing Panel resolution before arbitration is expressly contemplated and allowed by the parties' operative agreement, the CBA. Local 804 Mot. Dismiss, Ex. 4 at 258–59 ("UPS/Local 804 CBA"); *see Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 567–68 (1990) (A union "has broad discretion in its decision whether and how to pursue an employee's grievance against an employer."); *Perero v. Hyatt Corp.*, 151 F. Supp. 3d 277, 284 (E.D.N.Y. 2015) (dismissing case for, among other things, failure to plead that a union acted beyond its "broad discretion").

At most, plaintiff's statements plausibly allege a delay in resolving his 2022 employment denial. Plaintiff questions the validity of the UPS/Local 804 Panel that, at the time of the SAC, had been processing plaintiff's 2022 grievance for a year. *See* SAC ¶¶ 57, 60. However, this still does not adequately allege arbitrariness, discrimination, or bad faith on the part of Local 804. Plaintiff has not alleged that Local 804 ignored his grievance or that it delayed the processing of his meritorious grievance such as to prejudice him or foreclose arbitration. *Cf. Young v. United States Postal Serv.*, 907 F.2d 305, 308 (2d Cir. 1990). ("[A] union may breach its duty when it fails to process a meritorious grievance in a timely fashion with the consequence that arbitration on the merits is precluded."). Even if the Court were to find, which it does not, that the Union should have pressed for a Panel hearing more quickly, this would amount to no more than

negligence, and "mere negligence, even in the enforcement of a collective-bargaining agreement," does not support a claim for breach of the duty of fair representation. *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372–73 (1990); *see also Cruz*, 34 F.3d at 54. Accordingly, plaintiff does not have a viable duty of fair representation claim against the Union as to his 2022 denial of employment.

Plaintiff also alleges that UPS wrongfully denied his 2022 employment application in violation of the CBA. *See* SAC ¶ 66. However, UPS's 2022 denial, even if found to be a violation of the CBA, is insufficient to maintain a hybrid claim because such a claim requires wrongdoing by both an employer and a union. *See Carrion*, 227 F.3d at 33. For the reasons outlined above, plaintiff fails to plausibly state a claim as to Local 804's wrongdoing. Therefore, plaintiff fails to state a hybrid claim, and the Court refrains from further analysis of the alleged wrongdoing by UPS.

Accordingly, the Court grants defendants' motions to dismiss this hybrid claim.

III.    UPS's Request to Require Plaintiff to Seek Leave to File Future Complaints

UPS also seeks to restrain plaintiff's ability to file future complaints against it by requiring plaintiff to first obtain the Court's permission to file any such complaint. UPS Mot. Dismiss 12. Litigants who engage in "wilful, obstinate refusal to play by the basic rules of the system" may be sanctioned with restricted access to the judicial system. *See McDonald v. Head Crim. Ct. Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988). The Second Circuit has set forth several factors to consider when evaluating whether to restrict a litigant's access to courts due to abuse of the system: (1) history of "vexatious, harassing or duplicative lawsuits," (2) presence of a good faith motive for litigation, (3) *pro se* status, (4) needless expense or burden on parties or the courts, and (5) appropriateness of other

sanctions. *Iwachiw v. New York State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005).

At this point, these factors do not weigh in favor of restricting plaintiff's access to the judicial system. UPS has failed to demonstrate that plaintiff has abused the judicial system by, for example, filing harassing lawsuits or not having a good faith motive for his litigation. Further, as UPS recognizes, plaintiff has not filed an excessive number of bad faith complaints or received a warning for his actions. *See* UPS Mot. Dismiss 13; *Fariello v. Campbell*, 860 F. Supp. 54, 71 (E.D.N.Y. 1994). Accordingly, UPS's request is denied.

## CONCLUSION

For the reasons explained above, the Court grants defendants' motions to dismiss plaintiff's complaint in its entirety and denies UPS's request to require that plaintiff seek leave from the Court to file future complaints against it. The Clerk of Court is directed to enter judgment and close the case.

**SO ORDERED.**

_____/s/ Natasha C. Merle_____
NATASHA C. MERLE
United States District Judge

Dated:      March 28, 2024
            Brooklyn, New York

12